### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

VERNON NEAL ALLEN,          )
                                )
                   Petitioner,   )
v.                            )        Case No. CIV-04-1535-M
                                )
RON WARD,                )
                   Respondent.  )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing through counsel, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Petition be denied.

## Relevant Case History

Petitioner was charged in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-2000-1873, with two counts of First Degree Murder in the deaths of Robert Martinez and his brother, David Martinez. Petitioner was convicted of First Degree Murder in the death of Robert Martinez (Count I) and First Degree Manslaughter in the death of David Martinez (Count II). Petitioner was sentenced to life imprisonment on Count I and a term of four years on Count II.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed Petitioner's conviction by Summary Opinion filed January 28, 2003. *See* Response [Doc. #11], Exhibit 4, OCCA Summary Opinion.

Petitioner then sought post-conviction relief in the state district court.  On January 8, 2004,  Judge Jerry D. Bass granted the application, vacated the conviction on Count I, Murder in the First Degree, and granted Petitioner a new trial on that Count.  *See* Response, Exhibit 5, Petition in Error, with Order Granting Application for Post-Conviction Relief attached.

The State then appealed the district court order to the OCCA.  The OCCA vacated the district court's grant of post-conviction relief.  *See* Response, Exhibit 7, OCCA Order Vacating District Court Order Granting Post-Conviction Relief.

In this habeas action, Petitioner raises three grounds for relief:

(1)     The State presented insufficient evidence to support Petitioner's conviction of Count I, First Degree Murder with malice aforethought in the death of Robert Martinez.

(2)     Trial counsel was ineffective for failing to request a jury instruction for Count I on the lesser included offense of Manslaughter in the First Degree by Resisting Criminal Attempt, and appellate counsel was ineffective for failing to raise the issue on direct appeal.

(3)     Trial counsel was ineffective in agreeing to the exclusion of certain evidence at trial and in failing to take remedial steps in relation to the presence of a sleeping juror.

Grounds One and Two were raised for the first time in Petitioner's state post-conviction application.  Ground Three was raised on direct appeal.

## Standard of Review

Petitioner's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, a petitioner is not entitled to habeas corpus relief if his claim has been adjudicated on the merits by the highest state court unless the state court's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & 2254(d)(2). In conducting this inquiry, the factual findings of the state court are presumed correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Evidence at Trial

On the evening of March 19, 2000, Petitioner shot and killed two brothers, Robert Martinez and David Martinez.  At the time of the shooting, David Martinez had been living next door to Petitioner, at the home of his girlfriend, Tracie Munoz.  Robert Martinez was there visiting his brother.  Tr. Vol. I at 35-36.

At some point in the evening, Tracie Munoz and David Martinez went outside to move Robert Martinez's car into the garage.  Tr. Vol. I at 40-41.  As Tracie was moving boxes in the garage to make room for the car, Petitioner crossed Tracie's yard, passed in front of her garage, and said to her: "Hey good looking.  What are you doing?" Tr. Vol. I at 40-44.

3

David Martinez had been sitting in his brother's car, waiting to move it into the garage.  Upon hearing Petitioner's remark, David got upset and approached Petitioner.  Tr. Vol. I at 44. By the time Tracie exited the garage, David had Petitioner down on the ground and was kicking him.  Tr. Vol. I at 44-51.  Petitioner was balled up in the fetal position.  Tracie approached David, grabbed him by the hand and told him to come home.  Tr. Vol. I at 49, 51.  David complied and returned to Tracie's garage where Tracie and David remained.  Tr. Vol. I at 51-52.  Meanwhile, Petitioner retreated inside his home.

Robert Martinez came outside and talked with David about what had happened. David then put the car in the garage.  Tr. Vol. I at 53-54.  The three were then going to return inside the house.  David and Robert were returning inside through the garage and Tracie was pulling the garage door down when Petitioner came out of his house and began walking toward Tracie's house saying: "Where's that pussy at now?"  Tr. Vol. I at 54.  Tracie noticed that Petitioner's right hand was behind his back.  Tr. Vol. I at 55. She asked Petitioner to please go home but he kept walking toward her.  Tr. Vol. I at 56.   Robert and David heard Petitioner and opened up the garage door.  Tr. Vol. I at 56-57.  Robert came out first and walked toward the side of Tracie's house, telling Petitioner to leave his brother and his brother's girlfriend alone.  Tr. Vol. I at 57-58.  Tracie told Robert that Petitioner had his hand behind his back and Robert acknowledged that he thought Petitioner had a gun.  Tr. Vol. I at 60.  Robert stopped and stood next to Tracie.  Tr. Vol. I at 59, 67.

Petitioner then pulled his gun from behind his back and started firing it at Robert.  Tr. Vol. I at 60.  When the first shot was fired, Petitioner was walking toward Robert.  Tr.

4

Vol. I at 60, 65-68.  Robert received gunshot wounds to his face, hand and back.  Tr. Vol. II at 16-17.  Robert went straight down and Tracie knelt beside him and tried to get him up.  Tr. Vol. I at 61-62, 67-68.  David was standing in front of the garage and began to come toward Robert to help him.  Tr. Vol. I at 70. Petitioner then came after David and the two started to wrestle over the gun.  David fell to the ground and Tracie observed Petitioner standing over David, firing shots at him.  Tr. Vol. I at 73-85.  Both Robert and David were pronounced dead on arrival at the hospital.  Tr. Vol. I at 240-241, 259.

Petitioner admitted shooting both Robert and David to the first officer to arrive on the scene.  Tr. Vol. I at 197.  He also admitted to the shootings during a videotaped interview with police that was played to the jury.  Tr. Vol. II at 243.  Petitioner contended that he shot Robert Martinez because he "charged" at him.  With respect to David Martinez, Petitioner told police that he guessed he "lost it" and "went crazy."  *See* State Court Records [Doc. #12], Videotaped Interview, State's Ex. 71.

As noted earlier, the State charged Petitioner with First Degree Murder as to both Robert and David Martinez.  The jury was instructed on the elements of First Degree Murder, and as to both homicide charges the jury was also instructed on the lesser included offense of First Degree Manslaughter By Heat of Passion.  The jury found Petitioner guilty of First Degree Murder as to Robert Martinez, Petitioner's first victim.  The jury found Petitioner guilty of First Degree Manslaughter as to David Martinez, Petitioner's second victim.

<u>**Analysis**</u>

I.      <u>**Ground One – Sufficiency of the Evidence**</u>

In Ground One, Petitioner claims the evidence was insufficient to support his conviction on Count I, First Degree Murder of Robert Martinez.  Although Petitioner frames this issue as a sufficiency of the evidence claim, the thrust of his argument is that the jury's verdict is inconsistent with the First Degree Manslaughter conviction for the death of David Martinez.

A.      <u>**Procedural Default**</u>

Respondent has not addressed the merits of this claim but contends it is procedurally barred.  Petitioner concedes he did not raise this claim on direct appeal of his conviction. The record demonstrates that Petitioner did raise the claim in his application for post-conviction relief.  *See* Response, Exhibit 6, Brief in Support of Appeal from Order Granting Application for Post-Conviction Relief at 7  (identifying issues raised in application for post-conviction relief).  However, neither the trial court nor the appellate court ever addressed the claim either on the merits or as procedurally barred.

Petitioner raised three claims in his post-conviction application: (1) ineffective assistance of trial counsel for failing to request a jury instruction on Manslaughter by Resisting Criminal Attempt; (2) insufficiency of the evidence as to Count I, First Degree Murder; and (3) ineffective assistance of appellate counsel for failing to raise these issues on direct appeal.  *See* Response, Exhibit 6 at 7.  The district court granted relief on Petitioner's first claim, finding ineffective assistance of trial counsel, and on Petitioner's third claim to

the extent appellate counsel failed to raise ineffective assistance of trial counsel in regard to the manslaughter jury instruction.  The trial court did not address Petitioner's sufficiency of the evidence claim.  *See* Response, Exhibit 5, Petition in Error, with Order Granting Application for Post-Conviction Relief attached.  The State then appealed the district court's order to the OCCA, raising only the issues for which Petitioner was granted relief.  *See* Response, Exhibit 6.  Petitioner, represented by counsel in his post-conviction proceedings, did not separately raise any issue with respect to his sufficiency of the evidence claim.

Respondent takes the position that the claim is procedurally barred under Oklahoma law because it was raised for the first time in a post-conviction proceeding.  *See* Okla. Stat. tit. 22, § 1080.  Petitioner contends the claim is not procedurally barred because, although he asserted his claim in state court, no state court ever addressed the claim and, therefore, no state court ever *applied* a procedural bar.  *See  Harris v. Reed*, 489 U.S. 255, 263 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (quotations and citation omitted).

Respondent has not addressed whether the sufficiency of the evidence claim is exhausted.  Generally, for a claim to be exhausted, the claim must have been "fairly presented" to the state's highest court.  *Bear v. Boone*, 173 F.3d 782, 785 (10th Cir. 1999). Here, the sufficiency of the evidence claim was never presented to the OCCA, the highest court in Oklahoma to review criminal convictions.  *See id.* at 784 ("The Court of Criminal

7

Appeals is the court of last resort for criminal appeals in Oklahoma.") *citing* Okla. Stat. tit. 20, § 40.

Petitioner, apparently recognizing but not explicitly addressing the exhaustion issue, references in a footnote that the Oklahoma procedural rules governing post-conviction appeals provide no mechanism for a cross-appeal.  *See* Reply [Doc. #19] at 2, footnote 1. Therefore, according to Petitioner, given the procedural posture of his post-conviction proceedings, he could not have presented the sufficiency of the evidence claim to the OCCA in the post-conviction appeal.

The OCCA rules governing post-conviction appeals are silent with respect to the issue of filing a cross-appeal.  *See* Rules 5.1-5.6, Rules of the Oklahoma Court of Criminal Appeals, Tit. 22, Ch. 18 App. (2001).[1]  The rules seemingly recognize that an appeal constitutes an appeal of all issues raised at the district court level:

> **Final Judgement on Post-Conviction Application.**  The appeal to this Court under the Post-Conviction Procedure Act constitutes an appeal *from the issues raised*, the record, and findings of fact and conclusions of law made in the District Court in non-capital cases.  [Citation omitted].

*Id.*, Rule 5.2(A) (emphasis added).  It is unclear whether Petitioner could have separately raised the issue in responding to the State's appeal.  The rules do not require an answer brief "unless directed by the Court."  *See id.* Rule 5.2(C)(4) ("This Court may direct the other party to file an answer brief, if necessary.  However, the respondent is not required to file an

---

[1]The rules governing civil appeals before the Oklahoma Court of Civil Appeals, conversely, contain express provisions related to cross-appeals.  *See* Okla. Sup. Ct. R. 1.27.

8

answer brief unless directed by the Court.")  As Petitioner points out, the OCCA rendered its opinion without a request for an answer brief.  *See* Petition at (unnumbered) 8 ("Without giving Mr. Allen's counsel the opportunity to respond, [the OCCA] vacated the district court's order granting post-conviction relief . . . .)."

If the claim is exhausted, then Petitioner is correct that the claim is not procedurally barred since no state court ever applied a procedural bar.  If the claim is unexhausted, this Court could apply the doctrine of anticipatory procedural bar.  *See Moore v. Schoeman*, 288 F.3d 1231, 1233 n. 3 (10th Cir. 2002) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it."). If Petitioner were to return to state court and raise the claim in a second application for post-conviction relief, it is clear that the Oklahoma courts would apply a procedural bar. *See* Okla. Stat. tit. 22, § 1086.  And, Petitioner fails to raise any issue of cause and prejudice that would overcome application of a procedural bar to this claim.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Because of the unique procedural posture of the claim, rather than decide Petitioner's challenge to the sufficiency of the evidence on grounds of procedural bar, the merits of the claim are reviewed.

### B.    Merits

In a federal habeas corpus action, a due process challenge to the sufficiency of the evidence at trial is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackson*, this Court must review the evidence in the light most favorable

to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319.

Under Oklahoma law, "[a] person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being.  Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Okla. Stat. tit. 21, § 701.7(A).  The deliberate intent to take a human life may be formed instantly before commission of the act. *Powell v. State*, 906 P.2d 765 (Okla. Crim. App. 1995).

A review of the record in the light most favorable to the prosecution establishes that a rational fact finder could readily have found Petitioner guilty beyond a reasonable doubt of first degree murder under Oklahoma law.  Petitioner went inside his home after removing himself from the threat of harm from David Martinez.  He retrieved his gun and went back outside.  He saw that Robert Martinez was not the individual who had kicked him on the ground, yet he walked toward Robert and fired his gun at him.  Robert Martinez died of multiple gunshot wounds.

Petitioner does not challenge any of this evidence, nor does he challenge the sufficiency of the evidence as to any issue of self-defense.  Instead, he argues that it was inconsistent for the jury to find that Petitioner killed the first victim, Robert Martinez, with malice afterthought, but acted in the heat of passion when he killed the second victim, David Martinez.  *See* Petitioner's Brief at 11 ("The verdict in this case is a factual impossibility.").  Petitioner contends these shootings occurred within seconds of each other and, therefore, it

10

was impossible for Petitioner's state of mind to go from that of "intent to kill" to that of "heat of passion." *See* Petitioner's Brief at 10. ("Fatal to the conviction for first degree murder is the fact that the jury found that the death of David Martinez was perpetrated while Mr. Allen was in the heat of passion. However, Robert Martinez was shot before rather than after David Martinez, meaning that Mr. Allen would have necessarily been in the heat of passion during both shootings.").

Contrary to Petitioner's argument, the first degree murder conviction is supported by sufficient evidence, and Petitioner's own statements to police render the two verdicts entirely consistent. As previously set forth, Petitioner admitted to the shootings during a taped interview with police that was played to the jury. Petitioner explained that he knew Robert Martinez had not been the brother who had kicked him to the ground, yet he fired, shooting Robert Martinez in the face and back. In contrast, Petitioner said that when he then faced David Martinez, he "lost it" and "went crazy." The evidence at trial was sufficient for any rational trier of fact to find that Petitioner committed First Degree Murder, with malice aforethought, in the death of Robert Martinez. And that conviction is not inconsistent with the jury's different determination as to Petitioner's conduct toward David Martinez. Ground One of the Petition provides no basis for federal habeas relief.

## II.   Ground Two -- Ineffective Assistance of Trial and Appellate Counsel/Jury Instructions

In his second ground for relief, Petitioner contends he received ineffective assistance of appellate counsel because appellate counsel failed to raise an ineffective assistance of trial

counsel claim on direct appeal.  Petitioner contends trial counsel was ineffective for not requesting a lesser included offense instruction on Manslaughter by Resisting Criminal Attempt as to Count I in the death of Robert Martinez.

The record shows that at trial, the court determined a manslaughter instruction was proper with respect to the death of Robert Martinez.  Tr. Vol. III at 107-109.  Much discussion was had as to which manslaughter instruction was proper.  The trial court made passing reference to Manslaughter by Resisting Criminal Attempt (*see* OUJI-CR-4-102) and stated "that won't work" (Tr. Vol. III at 109), but no other discussion about the propriety of this instruction took place.  The jury was instructed on Heat of Passion Manslaughter as to both Counts.

On Petitioner's direct appeal, appellate counsel raised a claim of ineffective assistance of trial counsel for failing to request an instruction on Second Degree Murder on Count I.  *See* Response, Exhibit 1, Brief of Appellant at 14.[2]  The OCCA rejected this claim, finding that under Oklahoma law Petitioner was not entitled to a second degree murder instruction "because Allen's actions in shooting Robert Martinez were directed specifically and intentionally at him."  *See* Response, Exhibit 4, OCCA Summary Opinion at 2.

In his application for post-conviction relief, Petitioner raised the claim he makes here, that appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel based upon trial counsel's failure to request an instruction on Manslaughter

---

[2]In raising this issue, Petitioner's appellate counsel contended that the manslaughter instruction as to Count I was not appropriate as no provocation existed with respect to the death of Robert Martinez.  *See* Response, Exhibit 1, Brief of Appellant at 5.

by Resisting Criminal Attempt.   The trial court granted the application, finding the circumstances of the crime warranted this instruction and, therefore, that appellate counsel was ineffective.   As the trial court concluded:

> The proper manslaughter instruction would have given the jury the authority to convict the defendant of a lesser crime of Manslaughter by Resisting Criminal Attempt, whereas the Heat of Passion Manslaughter instruction in fact precluded the jury from making a finding of manslaughter.

*See* Response, Exhibit 5, Petition In Error, Order Granting Application for Post-Conviction Relief, attached, at 6.

The State then filed an appeal, and the OCCA vacated the trial court's order granting post-conviction relief.   *See* Response, Exhibit 7, OCCA Order Vacating District Court Order Granting Post-Conviction Relief.   The OCCA determined that the ineffective assistance of trial counsel claim was barred by *res judicata* since the question of jury instructions with regard to the death of Robert Martinez had been addressed on direct appeal and could not be "subdivided." *Id*. at 4.   The OCCA further determined that the *res judicata* bar could not be circumvented by alleging ineffective assistance of appellate counsel.   Pursuant to Okla. Stat. tit. 22, § 1089(C), Petitioner was required to demonstrate "why the issue presented in the application for post conviction relief was not, and could not have been, presented on direct appeal, and to show that consideration of that issue supports a conclusion that the outcome of the trial would have been different but for the error, or that the defendant is factually innocent." *See id*. at 4 *citing* Okla. Stat. tit. 22, § 1089(C).   The OCCA found that nothing

13

in the record presented supported Petitioner's claim that but for appellate counsel's errors, the outcome of his direct appeal would have been different.  As the OCCA reasoned:

> [Mr. Allen's] jury convicted him of the offense of First Degree Murder in Robert Martinez's death.  Consideration of a manslaughter conviction would only have occurred had the jury not found [Mr. Allen] guilty of the charged offense.  Mr. Allen's jury was given a first degree manslaughter instruction with regard to the murder of Robert Martinez.  The jury found him guilty of first degree murder and in accordance with the instructions the jury never reached the issue of first degree manslaughter, therefore the question of instructing on manslaughter as Heat of Passion Manslaughter or Manslaughter by Resisting Criminal Attempt is both moot and not relevant to the issue of effective assistance of counsel.  Mr. Allen is unable to show that the giving of any other manslaughter instruction would have changed the outcome of his trial, or that the issue is subject to review at this time under the guise of a claim of ineffective assistance of appellate counsel.

*Id*. at 6.

Respondent contends the ineffective assistance of trial counsel claim is procedurally barred.  This Court need not decide the procedural bar issue as the merits of the ineffective assistance of trial counsel claim must be reviewed to determine whether appellate counsel rendered ineffective assistance of counsel.  *See, e.g., Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999)  ("When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, [the court] look[s] to the merits of the omitted issue.  'If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel.'") (*citing United States v. Cook*, 45 F.3d 388, 393 (10th Cir. 1995)).

Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  To demonstrate that counsel was ineffective, a habeas petitioner must satisfy a two-part test.  First, the petitioner must show that counsel's performance was deficient, using an objective standard of reasonableness and considering the totality of circumstances at trial.  *Id.* at 687-688.  Second, the petitioner must show that counsel's deficient performance prejudiced the defense.

To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Both deficient performance and prejudice must be established in order for the petitioner to prevail on a claim of ineffective assistance of counsel.  Therefore, both components of the inquiry need not be addressed by the court if the petitioner makes an insufficient showing on one.  *Id.* at 697.

Here, Petitioner cannot demonstrate that but for counsel's failure to request an instruction on Manslaughter by Resisting Criminal Attempt the result of the proceedings would have been different.

Oklahoma's uniform jury instruction for Manslaughter in the First Degree by Resisting Criminal Attempt sets forth the following elements of proof:

<u>First</u>, the death of a human;

Second, perpetrated unnecessarily (while resisting an attempt by the deceased

to commit a crime) / (after an attempt by the deceased to commit a crime had

failed);

Third, perpetrated by the defendant.

OUJI-CR-4-102.   Petitioner argues in conclusory fashion  that "although Robert Martinez

had not yet attacked Mr. Allen, he believed that David Martinez was going to attack him as

he approached with Robert Martinez."  Petitioner's Brief at 16-17.  Petitioner then argues:

"It does not matter whether Robert Martinez was actually going to attack Mr. Allen, only that

Mr. Allen believed he was in danger."  Petitioner's Brief at 17.  *See also* Petitioner's Reply

at 3 ("Mr. Allen had always been clear that Robert Martinez came outside after the beating,

and when he began to walk in Mr. Allen's direction, Mr. Allen perceived his advance to be

hostile given the beating he had just taken from David Martinez.").  Petitioner fails to cite

any specific evidence that would support giving this instruction to the jury.  It is apparent,

therefore, that the only evidence Petitioner relies upon to support the giving of this

instruction is his own statement given during his videotaped interview with the police that

Robert "charged" him.

Under Oklahoma law, however, a defendant's own self-serving statement of alleged

assault by the victim is insufficient standing alone to establish *prima facie* evidence of first

degree manslaughter by resisting a criminal attempt and, therefore, to warrant a jury

instruction on that offense.  *See e.g.*, *Bland v. State*, 4 P.3d 702, 719 (Okla. Crim. App. 2000)

(requiring that *prima facie* evidence of all legal criteria for the lesser included offense be

16

presented to warrant a jury instruction).[3]  As the Committee Comments to the uniform jury instructions explain:  "An 'unnecessary' killing constituting first degree manslaughter [by Resisting Criminal Attempt] would thus be found under circumstances where the defendant did not initiate the difficulty, yet honestly but unreasonably believes either that he is in danger of injury, or that slaying is the only way to prevent injury.  *See* OUJI-CR-4-102, Committee Comments.

Here, however, Petitioner came out of his house saying "Where's that pussy at now?" and walked toward his victims with a loaded gun held behind his back.  Tracie Munoz, the only eyewitness who testified at trial, stated that Robert Martinez had stopped walking toward Petitioner and was standing next to her when Petitioner pulled his gun and shot him. Tr. Vol. I at 95.  In addition, Tracie Munoz's testimony indicated that Petitioner was approximately nine feet from Robert Martinez when he fired the first shot.  Tr. Vol. I at 65-66.  Petitioner's stand alone self-serving statement that Robert was "charging" him is not "good and sufficient on its face" to constitute the lesser offense.  Because sufficient *prima facie* evidence of the lesser offense was not presented at trial, an instruction was not warranted, as the trial judge implicitly recognized when she briefly considered and rejected an instruction on manslaughter by restricting criminal attempt ("That won't work."  Tr. Vol. III at 109).  Under these circumstances, no prejudice occurred when trial counsel failed to

---

[3]Oklahoma law defines *prima facie* evidence as evidence that is "good and sufficient on its face . . . . to established a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted will remain sufficient . . . to sustain a judgment in favor of the issue which it supports."  *Bland* at 719-720.

request that instruction. Consequently, Petitioner's ineffective assistance of trial and appellate counsel claims are without merit, and the OCCA's adjudication of Petitioner's ineffective assistance of counsel claims did not result in a decision that was either contrary to or an unreasonable application of *Strickland*.

## III.   Ground Three -- Ineffective Assistance of Trial Counsel/Other Evidence

In his third ground for relief, Petitioner raises additional claims of ineffective assistance of trial counsel. First, he claims trial counsel erroneously agreed to redact a portion of Petitioner's videotaped interview with police where he made reference to knowledge that the Martinez brothers were "gang members who dealt drugs, appeared to be pedophiles, and had been incarcerated in the penitentiary." *See* Petitioner's Brief at 22. According to Petitioner, exclusion of this evidence precluded the jury from properly considering his defense of self-defense and/or what degree of homicide Petitioner committed. Rejecting this claim on direct appeal, the OCCA held:

> Allen cannot establish that his trial counsel was ineffective for agreeing to exclude evidence of his belief that the Martinez brothers were convicted felons involved in gangs and drug dealing. A substantial amount of such evidence came before the jury (through the videotape of Allen and the testimony of Sergeant Palmer), and there is not a reasonable probability that the jury's verdict would have been changed by hearing more specific evidence about Allen's suspicions.

*See* Response, Exhibit 4, OCCA Summary Opinion at 3.[4]

---

[4]Sergeant Palmer was the first officer to arrive on the scene of the crime and he was the arresting officer. Palmer testified that while Petitioner was detained in his car, he relayed to him that drug activities had been going on next door and that he was concerned they were going to "take over the neighborhood." Tr. Vol. I at 217.

Second, Petitioner contends trial counsel failed to take remedial steps when the presence of a sleeping juror was brought to counsel's attention. The OCCA similarly rejected this claim, concluding that Petitioner could not demonstrate "inadequate performance or prejudice regarding the juror who allegedly fell asleep . . . ." *Id*.

Petitioner concedes that the OCCA addressed these issues on direct appeal and "identified the proper governing legal standard" but contends that the OCCA's "application of that standard in this case is unreasonable. . . ." *See* Petitioner's Brief at 24.[5] A state court decision is an unreasonable application of federal law under § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "An 'unreasonable application of federal law is different from an incorrect application of federal law,'" *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (*quoting Williams*, 529 U.S. at 410), and "is to be evaluated by an objective standard." *Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir.2001) (*citing Williams*, 529 U.S. at 409-10). "Thus, even an incorrect application of federal law can be 'reasonable' under this standard." *Parker v. Scott*, 394 F.3d 1302, 1308 (10th Cir. 2005).

Petitioner, therefore, faces a heavy burden to demonstrate that the OCCA applied *Strickland* not erroneously or incorrectly, but unreasonably. Having reviewed the record as to these claims, Petitioner's conclusory allegations of prejudice are insufficient to meet this

---

[5]The OCCA cited *Strickland* in addressing Petitioner's ineffective assistance of trial counsel claims. *See id*. at 3, n. 5.

heavy burden.   With respect to the evidence of the Martinez brothers' questionable backgrounds and activities, Petitioner concedes the evidence of pedophilia would not be relevant.  As to the drug activity and gang relations, the OCCA correctly noted that some of this evidence was presented to the jury.  That additional evidence was omitted does not establish that Petitioner was prejudiced.  Significantly, Petitioner had no direct evidence of gang or drug activity.  No drugs or narcotics were found on the victims, and Petitioner acknowledged that he had had no trouble with the Martinez brothers prior to this incident. Tr. Vol. I at 218.

With respect to the allegations of the sleeping juror, Petitioner submits notes taken by family members that reflect at times a juror may have been falling asleep.  *See* Petition, Exhibit 3.  Conspicuously absent, however, are any allegations that trial counsel, or for that matter, the trial court, was ever made aware of a sleeping juror. The trial record is silent in this respect.  Additionally, Petitioner fails to articulate any manner in which he suffered prejudice as a result of the alleged sleeping juror.

Ground Three of the Petition should be denied as Petitioner has wholly failed to demonstrate that the OCCA's adjudication of these issues constitutes an unreasonable application of *Strickland*.

## **RECOMMENDATION**

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by August __15th__, 2005.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

DATED this __26th__ day of July, 2005.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE